**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF KENTUCKY**
**ASHLAND DIVISION**

IN RE

LARRY CONRAD ADDINGTON                                                         CASE NO. 12-10029

DEBTOR

BUSINESS AIRCRAFT LEASING, INC.                                                 PLAINTIFF

V.                                                                                                     ADV. NO. 24-1006

ULTRA ENERGY RESOURCES, LLC                                                  DEFENDANT

**MEMORANDUM OPINION**

The Plaintiff Business Aircraft Leasing, Inc. ("BAL") seeks a declaratory judgment that it purchased all the Debtor's ownership rights in the Defendant Ultra Energy Resources, LLC ("Ultra") during the bankruptcy proceeding. [ECF No. 1.] Ultra filed a motion to dismiss for lack of jurisdiction and a motion for summary judgment. [ECF Nos. 6, 9.] BAL objects and also asks for summary judgment. [ECF Nos. 12-14.]

A hearing was held on March 20, 2025, and the motions are submitted for a decision. [ECF Nos. 18-21.] Ultra's motion to dismiss is denied, but Ultra is entitled to summary judgment because the transfer documents and other papers filed in the bankruptcy proceeding resolve the ownership issue.

**I.     Undisputed Facts.**

The Debtor Larry Conrad Addington filed a chapter 11 petition on January 26, 2012. [Case No. 12-10029, ECF No. 1.] The case was converted to chapter 7 on May 14, 2012. [*Id.*, ECF No. 111.] Robert J. Brown was appointed Chapter 7 Trustee. [*Id.*, ECF Nos. 136-137.]

1

BAL filed a proof of claim for $1,362,628.08. [*Id.*, Proof of Claim No. 25-1.] The claim is secured by a charging lien imposed in prepetition litigation that encumbered, among other assets, the Debtor's right to receive distributions from his 36% membership interest in Ultra. [*Id.*] The Chapter 7 Trustee agreed to sell this membership interest and certain stock to BAL in a transaction described in the Motion to Approve Bidding Procedures filed February 19, 2015. [Case No. 12-10029, ECF No. 270 ("Sale Motion").]

The Sale Motion defines the assets sold as the "BAL Collateral" and describes them as:

> (i) Ultra Energy Resources, LLC: The Debtor owns 36% of the membership interest in Ultra ("Ultra Membership Interest"). Ultra, in turn, owns 100% of the membership interest in Carbon Fuels Properties, LLC ("CFP"). CFP is the fee simple owner of approximately 7,400 acres of real property, including mineral rights, spanning West Virginia and Kentucky on which metallurgical coal is mined. CFP has received periodic royalties from the mining operations, which flow through to Ultra and, ultimately, to Ultra's members.
>
> (ii) Compressus Stock … .

[*Id.* at ¶ 3.]

The Sale Motion "seeks authority to sell the BAL Collateral to" BAL as a stalking horse credit bidder or to a higher bidder at an auction sale. [*Id.* at ¶¶ 6-9.] The agreement is documented by the Limited Liability Company Interest Purchase Agreement attached as Exhibit B to the Sale Motion. [Case No. 12-10029, ECF No. 270-2 ("Purchase Agreement").] Prior to the sale hearing, BAL agreed to increase the purchase price, and the sale was approved by Order entered May 8, 2015. [*Id.*, ECF No. 282 (the "Sale Order").]

Paragraph 3 of the Sale Order provides:

> The Trustee is authorized, empowered and directed, without further application to or authority of this Court, to sell the Auction Assets to BAL and its assignee(s). The Trustee is authorized, empowered and hereby directed, without further application to or authority of this Court, to execute and deliver all documentation

        that may be necessary or reasonably requested by BAL and/or its assignee(s) to evidence the transfers of the Auction Assets.

[*Id.*]

        The Sale Order uses the term "Auction Assets" to describe the assets sold. This term was used in, but not defined by, the Sale Motion to mean the same thing as the BAL Collateral. [*See, e.g.,* Case No. 12-10029, ECF 270 at ¶ 17 (referring to the need for a prompt sale of the BAL Collateral resulting in the highest value for the Auction Assets).] This is confirmed in the Bid Procedures attached to the Sale Motion and approved at Exhibit 1 to the Bid Procedures Order, which define "Auction Assets" using the same language as the definition of the "BAL Collateral" in the Sale Motion. [*Id.*, ECF No. 270-1 at Ex. 1 and ECF No. 276 at Ex. 1.]

        The Chapter 7 Trustee and BAL executed the Purchase Agreement on May 20, 2015. [ECF No. 1-4.] The executed Purchase Agreement is identical to the contract attached as Exhibit B to the Sale Motion except for the increased purchase price. [*Compare* Case No. 12-10029, ECF No. 270 at Ex. B with ECF No. 1-4.]

        The Debtor received his chapter 7 discharge, and the case was closed on June 20, 2024. [Case No. 12-10029, ECF Nos. 289, 443.]

        On December 6, 2024, BAL moved to reopen the bankruptcy case to file the underlying adversary proceeding seeking a declaratory judgment that BAL purchased the Ultra Membership Interest with both governance and economic rights. [*Id.*, ECF No. 444; *see also* ECF No. 1 at ¶¶ 39-44.] The motion was granted on December 11, 2024, and BAL filed the Complaint initiating this adversary proceeding. [*Id.*, ECF Nos. 445-446.]

3

## II. The Bankruptcy Court Has Jurisdiction.

The Plaintiff seeks a declaration that the Ultra Membership Interest purchased from the Debtor's estate includes governance and economic rights. This requires an interpretation of the Sale Motion, the Sale Order, and the related papers and documents.

A bankruptcy court has jurisdiction to interpret and enforce its own orders. 28 U.S.C. § 1334(b); *see also Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009); *Harper v. Oversight Comm. (In re Conco, Inc.)*, 855 F.3d 703, 711 (6th Cir. 2017); *In re HNRC Dissolution Co.*, Case No. 02-14261, 2018 WL 2970722 at *3 (Bankr. E.D. Ky. June 11, 2018), aff'd, 3 F.4th 912 (6th Cir. 2021). The Sale Order specifically reserves this jurisdiction:

> The Court retains exclusive jurisdiction to enforce the provisions of this Final Sale Order, or any agreement executed in connection herewith, including resolving any disputes concerning this Final Sale Order.

[Case No. 12-10029, ECF No. 282 at ¶ 11.]

Interpretation and enforcement of a sale order is a core proceeding. 28 U.S.C. § 157(b)(2)(N) (orders approving the sale of property). Ultra's Motion to Dismiss for lack of jurisdiction is denied.

## III. BAL Purchased an Economic Interest in Ultra.

The Sale Motion indicates an intent to transfer the assets defined as the BAL Collateral (also referred to as the Auction Assets). BAL argues that is everything the Debtor owned, *i.e.*, the governance and economic rights associated with the Debtor's 36% membership interest in Ultra. This interpretation is inconsistent with the Sale Motion, the Sale Order, the Purchase Agreement, and the Operating Agreement. Only the economic interest – the right to distributions – was offered for sale and transferred to BAL.

4

**A. The Sale Motion Only Requested Approval of a Sale of Distribution Rights.**

The Sale Motion makes it clear the intent was to sell the BAL Collateral. [*See* Case No. 12-10029, ECF No. 270 at ¶¶ 6-7, 9, 17, 21, 23, 28.] For example, Paragraph 6 provides that "the Trustee seeks authority to sell the BAL Collateral …". [*Id.* at ¶ 6.] Paragraph 9 contemplates an auction sale: "… the BAL Collateral shall be offered for sale to the highest bidder at the Auction …" [*Id.* at ¶ 9.] Paragraph 21 confirms the parties contemplated a sale free and clear of liens: "The Trustee also requests that the Sale Order provide that the sale of the BAL Collateral is free and clear of any interest held by any third party in any of the assets to be sold." [*Id.* at ¶ 21.]

Proof of Claim 25-1 confirms that the collateral that secured the claim was based on a Charging Order issued in prepetition state court litigation. [Case No. 12-10029, POC No. 25-1, (Ex. 2 to the Addendum).] The Charging Order provides, "The interest of Judgment Debtor [Larry Addington] in the following Kentucky limited liability companies are charged with payment of the unsatisfied amounts of Plaintiff's judgment: … (28) Ultra Energy Resources …" [*Id.*] The Charging Order also says it is a lien pursuant to K.R.S. § 275.260(3), which recognizes the lien only attaches to "the right to receive distributions made with respect to the judgment debtor's limited liability interest." [*Id.*]; K.R.S. § 275.260(3).

Further, "[t]o the extent so charged, the judgment creditor has only the rights of an assignee and shall have no right to participate in the management or to cause the dissolution of the limited liability company." K.R.S. § 275.260(2). The Sale Motion and Proof of Claim confirm that the Chapter 7 Trustee and BAL only agreed to sell and purchase BAL's collateral: a right to distributions from Ultra and nothing more.

5

**B. The Sale Order Only Approved the Sale Requested by the Sale Motion.**

The Sale Order approved transfer of the economic interest proposed by the Sale Motion. The limit on the Chapter 7 Trustee's power to sell, and the Buyer's understanding of what it would acquire, as the BAL Collateral and the Auction Assets, is highlighted in the findings in the Sale Order:

> (q) The Trustee has full power and authority to execute and deliver all documents in a form agreeable to BAL, transferring the Auction Assets to BAL or its respective assignee(s), and no further consents or approvals are required for the Trustee to consummate the Sale.
>
> (s) Neither BAL nor its assignee(s) is a mere continuation of the Debtor or the estate and there is no continuity of enterprise between BAL or its assignee(s) and the Debtor or the estate.
>
> (t) Neither BAL nor its assignee(s) is, as a result of any action taken in connection with the purchase of the Auction Assets, a successor to the Debtor.

[Case No. 12-10029, ECF No. 282.] BAL did not acquire everything the Debtor owned.

BAL's credit bid to pay the purchase price for the BAL Collateral also confirms only the distribution rights subject to the charging lien were acquired. BAL could not have used a credit bid to pay the purchase price for an asset that was not subject to its charging lien. BAL could only credit bid on its collateral, which is limited by the Charging Order and statute to the Debtor's distribution rights in Ultra. 11 U.S.C. § 363(k) (right of creditor to offset its secured claim against purchase price of property subject to its lien); *In re Charles St. African Methodist Episcopal Church of Boston*, 510 B.R. 453, 459 (Bankr. D. Mass. 2014) (section 363(k) allows a secured creditor to credit bid for an asset with the claim for which the asset serves as collateral); *Beal Bank, S.S.B. v. Waters Edge Ltd. P'ship*, 248 B.R. 668, 679-80 (D. Mass. 2000) (a secured creditor has no right to credit bid in a transaction for sale of property not subject to creditor's lien); *In re Hickey Properties, Ltd.*, 181 B.R. 171, 173 (Bankr. D. Vt. 1995) (creditor may not credit bid on property that is not subject to its lien).

### C. The Purchase Agreement Only Transferred Economic Rights.

The Purchase Agreement confirms the Sale Motion and Sale Order only asked for sale of the distribution rights for the Debtor's 36% equity ownership in Ultra (referred to therein as the "Ultra Interest"). The fifth Recital recognizes the Ultra Interest is property of the estate and the Bankruptcy Court could authorize sale of the distribution rights:

> [S]ubject to the Bankruptcy Court's approval, the "right to receive distributions" on account of the Ultra Interest, as set forth in KRS 275.260(4) and KRS 275.255(1)(b)-(c) (the "Economic Rights") may be sold and transferred free and clear of all liens, claims, and encumbrances pursuant to 11 U.S.C. § 363(b)(1).

[ECF No. 1-4.]

The next Recital and the transfer language in Section 1 then refer to a sale of "the Ultra Interest and the Economic Rights associated therewith." [*Id.*] BAL argues that including the "Ultra Interest" with the Economic Rights in the text reveals an intent to convey governance and economic rights. This is inconsistent with the quoted language from the Recital that only addresses the Court's authority to transfer the Economic Rights.

It also ignores the reference to the applicable Kentucky statutes that limit the rights of a charging lienholder and the purchaser at a foreclosure sale. The charging lienholder has the rights of an assignee of distribution rights, but "no right to participate in the management." K.R.S. § 275.260(2). The purchaser at a foreclosure sale would only receive the assignee rights. K.R.S. § 275.260(4). Even without a charging lien, the statutes limit a transfer outside the terms of an operating agreement to "only the distributions to which the assignor would be entitled"; there is no right "to participate in the management and affairs" of the company. K.R.S. § 275.255(1)(b)-(c); *see also* Part III.D (discussing the impact of limits in the governing Operating Agreement).

Further, the Purchase Agreement was an attachment to the Sale Motion and the prior discussion confirms the Sale Motion clearly limited the sale to the BAL Collateral – the referenced Economic Interests. *See supra* at Part III.A. The draft Purchase Agreement was ultimately executed without change, except for the increased purchase price. It makes no sense to interpret the transfer document to mean something different than what is so clearly described in the Sale Motion.

Therefore, the Chapter 7 Trustee only transferred the distribution rights that made up the collateral subject to the charging lien.

### D. The Chapter 7 Trustee Could Only Sell the Economic Rights Without Manager Approval.

The findings in the Sale Order confirmed the Chapter 7 Trustee did not need further consents or approval to complete the sale of the Auction Assets. The Purchase Agreement only commented on the need for Court approval of the sale of distribution rights and cited Kentucky statutes limiting transfers to distribution rights unless approved by the company. Therefore, if the Chapter 7 Trustee had intended to sell the entire interest, *i.e.*, the governance rights and economic interest, he would have needed the consent of the Manager of Ultra.

The relationship of Ultra's members is governed by the Operating Agreement for Ultra Energy Resources, LLC, effective as of April 2004. [ECF No. 1-1.] The initial "Members" were the Debtor, Robert Addington, Bruce Addington, Stephen Addington, and Michael Robinson. [*Id.*] Section 14.3(a) of the Operating Agreement requires Manager consent to transfer a Member's interest. [*Id.* at § 14.3(a).] If a transfer is approved, then the transferee is treated as a "substituted Member." [*Id.* at § 14.3(b).] If there is no approval, then the transferee has no governance rights and may not request or inspect the Company's books and records. [*Id.* at § 14.3(d).]

8

The Chapter 7 Trustee did not obtain approval from the Manager, so BAL is a transferee and not a substituted Member. But the Plaintiff argues it is not subject to the limited rights in § 14.3(d) because it is identified as a Member on Amendment 3 to Annex A to the Operating Agreement and § 14.3(d) uses the term "transferee" and not "Member" or "transferee Member". This reading ignores the identification of a transferee in § 14.3(d) as a party that was not admitted as a substituted Member in § 14.3(a).

Also, nothing in the Operating Agreement suggests that the mere identification of a person as a Member waives the approval process in § 14.3(a) or gives a Member listed on Annex A both governance and economic rights. And nothing in the record in the bankruptcy case indicates any attempt to obtain Manager approval or abrogates any term in the Operating Agreement.

IV.  **Conclusion.**

Summary judgment is only appropriate if there are no genuine issues of material fact, and a party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a) (incorporated by FED. R. BANKR. P. 7056). The relevant terms of the Sale Order and transfer documents are undisputed and unambiguous. The Sale Order and transfer documents show that BAL only purchased the economic rights of the Ultra Membership Interest. Ultra is therefore entitled to summary judgment.

Based on the foregoing, it is ORDERED:

(1) Ultra's Motion to Dismiss [ECF No. 6] is DENIED.

(2) Ultra's Motion for Summary Judgment [ECF No. 9] is GRANTED.

(3) BAL's Cross-Motion for Summary Judgment [ECF Nos. 13, 14] is DENIED.

(4) A separate judgment consistent with this Memorandum Opinion will be entered contemporaneously herewith.

9

___

**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



**Signed By:**
*Gregory R. Schaaf*
**Bankruptcy Judge**
**Dated: Wednesday, March 26, 2025**
**(grs)**